1

2

3

4

5

6

7

8                     IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   VICTOR RAYMOND LOPEZ, JR.,              No. 2:13-cv-0038-CMK

12              Plaintiff,

13         vs.                              MEMORANDUM OPINION AND ORDER

14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                Defendant.
16   _____/

17              Plaintiff, who is proceeding with retained counsel, brings this action for judicial

18   review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).

19   Pursuant to the written consent of all parties, this case is before the undersigned as the presiding

20   judge for all purposes, including entry of final judgment.  See 28 U.S.C. § 636(c).  Pending

21   before the court are plaintiff's motion for summary judgment (Doc. 15) and defendant's cross-

22   motion for summary judgment (Doc. 16).  For the reasons discussed below, the court will grant

23   plaintiff's motion for summary judgment or remand and deny the Commissioner's cross-motion

24   for summary judgment.

25   / / /

26   / / /

# I.  PROCEDURAL HISTORY[1]

Plaintiff applied for social security benefits on September 18, 2009, alleging an onset of disability on January 1, 1994, due to disabilities including Attention Deficit Hyperactivity Disorder, learning disability, and obsessive compulsive disorder (Certified administrative record ("CAR") 144-46, 151-57).  Plaintiff's claim was denied initially and upon reconsideration.  Plaintiff requested an administrative hearing, which was held on May 23, 2011, before Administrative Law Judge ("ALJ") Trevor Skarda.  In a June 28, 2011, decision, the ALJ concluded that plaintiff is not disabled[2] based on the following findings:

---

[1]    Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the undersigned does not exhaustively relate those facts here.  The facts related to plaintiff's impairments and medical history will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[2]    Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income ("SSI") is paid to disabled persons with low income.  42 U.S.C. § 1382 et seq.  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation

1.      The claimant has not engaged in substantial gainful activity since September 18, 2009, the application date (20 CFR 416.971 *et seq.*).

2.      The claimant has the following severe impairments: obsessive-compulsive disorder (hereinafter "OCD"); attention deficit hyperactivity disorder (hereinafter "ADD"); and major depressive disorder, single episode. (20 CFR 416.920(c)).

3.      The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.      After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to simple, routine, repetitive tasks; and is limited to low stress work (with only occasional changes in the work setting, and where only occasional decision-making is required).

5.      The claimant has no past relevant work (20 CFR 416.965).

6.      The claimant was born on January 24, 1991 and was 18 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7.      The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8.      Transferability of job skills is not an issue in this case because the claimant does not have past relevant work (20 CFR 416.968).

9.      Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10.     The claimant has not been under a disability, as defined in the Social Security Act, since September 18, 2009, the date the application was filed (20 CFR 416.920(g)).

(CAR 20-28). After the Appeals Council declined review on November 27, 2012, this appeal followed.

## II.  STANDARD OF REVIEW

process. <u>Bowen</u>, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. <u>Id</u>.

1   The court reviews the Commissioner's final decision to determine whether it is:

2   (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a

3   whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is

4   more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521

5   (9th Cir. 1996).  It is "such evidence as a reasonable mind might accept as adequate to support a

6   conclusion."  Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including

7   both the evidence that supports and detracts from the Commissioner's conclusion, must be

8   considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v.

9   Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's

10  decision simply by isolating a specific quantum of supporting evidence.  See Hammock v.

11  Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative

12  findings, or if there is conflicting evidence supporting a particular finding, the finding of the

13  Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

14  Therefore, where the evidence is susceptible to more than one rational interpretation, one of

15  which supports the Commissioner's decision, the decision must be affirmed, see Thomas v.

16  Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal

17  standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th

18  Cir. 1988).

### III.  DISCUSSION

19

20  Plaintiff argues the ALJ failed to properly assess and find plaintiff's mental

21  impairment met or equaled the criteria under 12.05(c) in the Listing of Impairments; failed to

22  account for his own prior findings; failed to properly evaluate the medical opinions; and erred in

23  determining plaintiff's residual functional capacity (RFC).

24  The Social Security Regulations "Listing of Impairments" is comprised of

25  impairments to fifteen categories of body systems that are severe enough to preclude a person

26  from performing gainful activity.  Young v. Sullivan, 911 F.2d 180, 183-84 (9th Cir. 1990); 20

4

1   C.F.R. § 404.1520(d).  Conditions described in the listings are considered so severe that they are

2   irrebuttably presumed disabling.  20 C.F.R. § 404.1520(d).  In meeting or equaling a listing, all

3   the requirements of that listing must be met.  Key v. Heckler, 754 F.2d 1545, 1550 (9th Cir.

4   1985).

5           Listing 12.05, which governs mental retardation, explains that:

6           Mental retardation refers to significantly subaverage general
            intellectual functioning with deficits in adaptive functioning
7           initially manifested during the developmental period; i.e., the
            evidence demonstrates or supports onset of the impairment before
8           age 22.
            The required level of severity for this disorder is met when the
9           requirements in A, B, C, or D are satisfied.
                  . . .
10                B.  A valid verbal, performance, or full scale IQ of 59 or
                  less;
11                OR
                  C.  A valid verbal, performance, or full scale IQ of 60
12                though 70 and a physical or other mental impairment
                  imposing an additional and significant work-related
13                limitation or function;
                  OR
14                D.  A valid verbal, performance, or full sale IQ of
                  60 through 70, resulting in at least two of the
15                following:
                        1.  Marked restriction of activities of daily
16                living; or
                        2.  Marked difficulties in maintaining social
17                functioning; or
                        3.  Marked difficulties in maintaining
18                concentration, persistence, or pace; or
                        4.  Repeated episodes of decompensation,
19                each of extended duration.

20  20 CFR, Part 404, Subpart P, Appendix 1.

21          Here, as to plaintiff's mental impairments the ALJ found it did not meet or equal

22  the listing criteria:

23          The claimant's mental impairment has been considered under the
            requirements of listing 12.05 based on issues raised by counsel at
24          the administrative hearing.  Mental retardation refers to
            significantly subaverage general intellectual functioning with
25          deficits in adaptive functioning initially manifested during the
            developmental period; i.e., the evidence demonstrates or supports
26          onset of the impairment before age 22.  More specifically, I

considered Listing 12.05, subsection "C", which requires a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function.

Albeit counsel highlighted the claimant's perceptual reasoning score of 65, the Listing considers "verbal, performance and full scale IQ scores". Here, the claimant's full scale IQ ranges from 86 to 76, which exceeds the code requirements of "60 through 70"; his verbal IQ ranges from 80 to 91, which well exceeds the Listing requirement of "60 through 70". (Exhibit 11F/page 6). The record does not include a performance IQ assessment. The claimant's test scores objectively demonstrate that he does not meet the Listing requirements and the disability evaluation continues.

The Listing includes paragraph D requirements that must be satisfied to meet Listing requirements. The paragraph D requirements are met if the claimant has a valid verbal, performance, or full scale IQ of 60 though 70, resulting in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

In activities of daily living, the claimant has mild restriction. Evidence in the record indicates that the claimant is independent in activities of personal care, that he can prepare his own meals, and that he is able to perform household chores. (Exhibit 4E/pages 4, 5). Whereas these activities suggest strong capacity, there is also evidence that the [claimant] is unable to fully count change and/or handle money, and that he must be reminded to take his medication. After reconciling the evidence, I find that the claimant has mild limitation in this area of functioning.

In social functioning, the claimant has moderate difficulties. The claimant testified that he has many friends. Evidence in the record, however, demonstrates numerous instances wherein the claimant initiated fights with other students, or demonstrated tendency to act out and disturb class. Based on these traits, I find that the claimant has moderate difficulty in social functioning.

With regard to concentration, persistence or pace, the claimant has moderate difficulties. The claimant's primary allegation is that he has problems with concentration, persistence and pace. Although problems in this area of functioning are inherent with the claimant's mental impairment, evidence in the record demonstrates that with proper medication, these problems are well controlled.

1    After reconciling the evidence, I find that the claimant has
     moderate difficulties in this area of functioning.
2
     As for episodes of decompensation, the claimant has experienced
3    one to two episodes of decompensation, each of extended duration.
     This finding is based primarily on the single depressive episode in
4    February 2011.  I find relevant, medical records wherein family
     members reported to physicians that the claimant manifested
5    suicidal ideation in the months prior to the February incident, and I
     find relevant, the claimant's prior attempt by jumping out of a
6    moving vehicle.  (Exhibit 28F/page 13).  Accordingly, I find that
     the claimant has experienced at least one episode of
7    decompensation, as defined by code.

8    The claimant's limitations in the various areas of functioning do
     not satisfy the paragraph D requirements.
9    (CAR 22-23).

10       Plaintiff argues the ALJ erred in failing to accept plaintiff's perceptual reasoning

11   score of 65 as equivalent of IQ testing required in 12.05.  He argues that because a perceptual

12   reasoning score of 65 is the equivalent, plus the ALJ's finding that he suffers from severe

13   impairments, he necessarily should have been found to meet the listing requirements of 12.05(C).

14       Defendant acknowledges the ALJ erred in failing to recognize the perceptual

15   reasoning score is equivalent to the IQ testing required in 12.05.  However, she argues any error

16   was harmless.  Specifically, she argues the ALJ did not specifically find the IQ scores to be valid,

17   and there is evidence to suggest the scores are not consistent with other evidence in the record.

18   In addition, the State agency physician who reviewed the record, did not find plaintiff met the

19   listings.   Thus, even though the ALJ may have erred in failing to acknowledge the equivalent IQ

20   score, the ALJ's finding that plaintiff did not meet the listing requirements was supported by

21   substantial evidence and free of material legal error.

22       The Ninth Circuit has applied harmless error analysis in social security cases in a

23   number of contexts.  For example, in Stout v. Commissioner of Social Security, 454 F.3d 1050

24   (9th Cir. 2006), the court stated that the ALJ's failure to consider uncontradicted lay witness

25   testimony could only be considered harmless " if no reasonable ALJ, when fully crediting the

26   testimony, could have reached a different disability determination."  Id. at 1056; see also Robbins

7

v. Social Security Administration, 466 F.3d 880, 885 (9th Cir. 2006) (citing Stout, 454 F.3d at 1056).  Similarly, in Batson v. Commissioner of Social Security, 359 F.3d 1190 (9th Cir. 2004), the court applied harmless error analysis to the ALJ's failure to properly credit the claimant's testimony.  Specifically, the court held:

> However, in light of all the other reasons given by the ALJ for Batson's lack of credibility and his residual functional capacity, and in light of the objective medical evidence on which the ALJ relied there was substantial evidence supporting the ALJ's decision.  Any error the ALJ may have committed in assuming that Batson was sitting while watching television, to the extent that this bore on an assessment of ability to work, was in our view harmless and does not negate the validity of the ALJ's ultimate conclusion that Batson's testimony was not credible.

Id. at 1197 (citing Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1990)).

In Curry, the Ninth Circuit applied the harmless error rule to the ALJ's error with respect to the claimant's age and education.  The Ninth Circuit also considered harmless error in the context of the ALJ's failure to provide legally sufficient reasons supported by the record for rejecting a medical opinion.  See Widmark v. Barnhart, 454 F.3d 1063, 1069 n.4 (9th Cir. 2006).

The harmless error standard was applied in Carmickle v. Commissioner, 533 F.3d 1155 (9th Cir. 2008), to the ALJ's analysis of a claimant's credibility.  Citing Batson, the court stated: "Because we conclude that . . . the ALJ's reasons supporting his adverse credibility finding are invalid, we must determine whether the ALJ's reliance on such reasons was harmless error."  See id. at 1162.  The court articulated the difference between harmless error standards set forth in Stout and Batson as follows:

> [T]he relevant inquiry [under the Batson standard] is not whether the ALJ would have made a different decision absent any error. . . it is whether the ALJ's decision remains legally valid, despite such error.  In Batson, we concluded that the ALJ erred in relying on one of several reasons in support of an adverse credibility determination, but that such error did not affect the ALJ's decision, and therefore was harmless, because the ALJ's remaining reasons *and ultimate credibility determination* were adequately supported by substantial evidence in the record.  We never considered what the ALJ would do if directed to reassess credibility on remand – we focused on whether the error impacted the *validity* of the ALJ's decision.  Likewise, in Stout, after surveying our precedent applying harmless error on social security cases, we concluded that "in each case, the ALJ's error . . . was inconsequential to the *ultimate nondisability determination*."

1
           Our specific holding in <u>Stout</u> does require the court to consider
whether the ALJ would have made a different decision, but significantly,
2          in that case the ALJ failed to provide *any reasons* for rejecting the
evidence at issue.  There was simply nothing in the record for the court to
3          review to determine whether the ALJ's decision was adequately supported.

4  <u>Carmickle</u>, 533 F.3d at 1162-63 (emphasis in original; citations omitted).

5          Thus, where the ALJ's errs in not providing any reasons supporting a particular

6 determination (i.e., by failing to consider lay witness testimony), the <u>Stout</u> standard applies and

7 the error is harmless if no reasonable ALJ could have reached a different conclusion had the error

8 not occurred.  Otherwise, where the ALJ provides analysis but some part of that analysis is

9 flawed (i.e., some but not all of the reasons given for rejecting a claimant's credibility are either

10 legally insufficient or unsupported by the record), the <u>Batson</u> standard applies and any error is

11 harmless if it is inconsequential to the ultimate decision because the ALJ's disability

12 determination nonetheless remains valid.

13          Defendant here attempts to apply the <u>Batson</u> standard, arguing that the ALJ's error

14 was harmless because it was essentially inconsequential to the ultimate decision.  However, as

15 the ALJ failed to engage in the discussion and provide any reason why listing 12.05C did not

16 apply to plaintiff, the court evaluates the error under the <u>Stout</u>  standard.  As was the case in

17 <u>Stout</u>, there is simply no analysis or reasoning for the court to review.  Therefore, the court can

18 only find the error harmless if no reasonable ALJ could have reached a different conclusion.  And

19 as plaintiff argues, the ALJ did find plaintiff suffered from some limitations due to his mental

20 disorders.  Whether those limitations are significant work-related limitations, sufficient to meet

21 the listing requirements, reasonable ALJ's opinions could differ.  The court cannot say *no*

22 reasonable ALJ could find plaintiff's limitations meet the listing requirement, and, therefore,

23 cannot find harmless error.  In fact, defendant's arguments support this finding.  As the ALJ

24 determined plaintiff's IQ scores were insufficient to warrant a discussion of the listing factors,

25 the validity of those scores were also not discussed.

26          As the court finds error in the ALJ's step three analysis, and therefore finds

remand to be appropriate, the remaining issued raised need not be addressed.

## IV.  CONCLUSION

For the foregoing reasons, this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and/or further findings addressing the deficiencies noted above.  Accordingly, IT IS HEREBY ORDERED that:

1.    Plaintiff's motion for summary judgment (Doc. 15) is granted;

2.    Defendant's cross-motion for summary judgment (Doc. 16) is denied; and

3.    This matter be remanded for further proceedings consistent with this order; and

4.    The Clerk of the Court is directed to enter judgment and close this file.

DATED:  February 6, 2015

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE